JOHN DOE, ex dem., HENRY WILLIAMS, and others, plaintiffs in error, vs. RICHARD ROE, cas. ejector, and JAMES H. COWART, tenant in possession, defendant in error.

[1.] If the subscribing witnesses of a lost deed be dead, and the original be not subscribed by a Justice of the Peace or other officer whose attestation is sufficient to admit it to record, nor affidavit be made of its execution, inferior evidence of its contents and execution may be adduced, and if a copy be established by the judgment of Court, evidence of that being made, the established copy ought to be admitted.

[2.] Title to land cannot be passed but by writing.

Ejectment, from Twiggs county.

This was an action of ejectment by Doe, upon the several demises of Drury Williams and Henry Williams, against Roe, casual ejector, and James H. Cowart, tenant in possession, for the recovery of a fractional lot of land lying on the Ocmulgee River, in the county of Twiggs, No. 194, containing one hundred and ninety-six acres, known as the "Dawson" or "Lewis" fraction.

The case came on to be tried upon the appeal, when plaintiff offered in evidence a copy deed of gift for the land in dispute from Drury Williams to Henry Williams the lessor, Drury being his father. Said copy had been established by order of Court, in lieu of the lost original.

The Court rejected the deeds thus offered, on the ground, that neither of the subscribing witnesses to said deed was a Justice of the Peace, or other officer authorized to attest deeds. Nor was there an affidavit by either of the subscribing witnesses, as to the execution of said deed. To which ruling plaintiff excepted.

Plaintiff then offered and read in evidence a deed for this, among other lands, from John Chapman, Calvin Rutland, Mary Howell, Reddin Rutland and John D. Rutland, to defendant, dated 30th July, 1854.

Plaintiff then read in evidence the answers of Samuel Howell and Mary Howell, to interrogatories.

*Samuel Howell*, answers: That he knows nothing of his own knowledge about the sale of fractional lots of land, Nos. 215 and 216, lying in Twiggs county, on the Ocmulgee river, but has heard the Rutlands conversing on the subject; and heard them say, that they had sold said lots, and has also heard defendant say that he purchased said lots of the Rutlands, and the wife of witness, to wit; Mary Howell.

*Cross-Examined*—Answers: That he don't know that the land ever belonged to him, witness, or his children. Don't know that Drury Williams gave the land to him and his children, but there was a clause in said Drury's will, giving all the land he owned in Georgia, to the children of Redding Rutland and his daughter Polly Rutland, that he has received notice of the pendency of this suit, and has also been notified that Henry Williams was claiming the land.

*Nancy Howell*, answers: That she knows that her children and son-in-law, John T. Chapman, sold a piece of land lying on the Ocmulgee river in Twiggs county, to James H. Cowart, but don't know the numbers of said land—knows that the land was her father's, Drury Williams, and was known as the Williams land—knows that it was her father's, because he always claimed it in his lifetime, and never knew his right to it questioned.

*Cross Int.*—She always thought the land belonged to her and her children, under Drury Williams' will—she has been notified of the pendency of this suit, and that Henry Williams was claiming and suing for the land.

Plaintiff then read in evidence, the answers of *William Williams*, who testified, that Drury Williams in 1827, made a division of his property among his children, in which division he gave to my brother, Henry Williams, plaintiff, in addition to certain negroes, two lots of land ; one known as the " *Rutland land*," and the other as the " Lewis and Dawson fraction ;" was not present at the division, neither did I

see any title pass between them, but father informed me that he gave Henry Williams the land above named. Henry, with the knowledge of our father and of my own knowledge, went into possession and cultivated the land in 1828; in 1829, witness rented the lands to Reason D. Beale of Macon, as the property of Henry Williams, and this too, came within the knowledge of our father, he making no claim to the rent, or pretending to exercise any ownership over the premises; these lands are in Twiggs county, numbers not known, but they are known as the lands formerly belonging to our father, Drury Williams. The Rutland lot is an upland lot, and takes its name from the fact of Rutland having lived on it." (*Here he gives the boundary of the lot.*)

"The other lot is a fraction on the Ocmulgee," (*giving the boundary.*) "This lot formerly belonged to Daniel Davis, who sold it to Dawson, and as well as remembered, sold at Sheriff sale as the property of Dawson, and purchased by our father, Drury Williams. Knows that his brother Henry was in possession of these lands in 1828, and heard his father say he had given them to him."

Plaintiff then read in evidence the answers of *Washington Durden,* taken by commission, who testified: That he "knows a fractional lot of land in Twiggs county, lying in the river swamp, on the Ocmulgee river, formerly belonging to Drury Williams, who told witness that if he wanted to buy said lot of land, he must go to his son Henry Williams, that he had given said lot to him; knew it as the Williams fraction, but don't recollect the number or district. Has heard James H. Cowart say, that he was in possession of said fraction; don't know how long Cowart has been in possession, but thinks about three years. Proposed to buy the lower lot or fraction from Drury Williams, who told witness that he had given the two fractions to his son, Henry Williams. Cowart told witness that he bought said land from Rutland's heirs, and that it was willed to them by Drury Wiliams. Cowart acknowledged that the land he was in

possession of was the land Henry Williams claimed." Here plaintiff closed. Defendant introduced no testimony.

Plaintiff's counsel requested the Court to charge the jury, that if they believed from the evidence, that plaintiff and defendant both claimed title from Drury Williams, then the admissions of Drury Williams that he had made a deed of gift, or had given the land in dispute to Henry Williams, and that he had gone into possession under said gift, then under the circumstances of this case, the defendant was bound by said admissions, which charge the Court refused to give, and plaintiff excepted.

The Court directed the jury, that defendant was entitled to a verdict, who found accordingly, and plaintiff excepted. And therefore plaintiff tenders his bill of exceptions, assigning as error the foregoing decisions and rulings.

Poe & Grier, for plaintiff in error.

Stubbs & Hill, *contra.*

*By the Court.*—McDonald, J. delivering the opinion.

The record in this case contains two assignments of error, one is on the judgment of the Court sustaining a demurrer to evidence, and the other on the refusal of the Court to give in charge to the jury a request submitted in writing by the counsel for plaintiff. The plaintiff offered in evidence proceedings had many years ago in Twiggs Superior Court, for the establishment of the copy of a lost deed to the premises in dispute, including the rule absolute or judgment of the Court establishing the copy, and also the copy deed as established. This evidence was demurred to, and the Court overruled the demurrer as to the proceedings in the Superior Court and judgment, but sustained it as to the copy deed, because of the deficiency of proof of its execution, neither of

the attesting witnesses being a Justice of the Peace or other officer authorized to attest deeds, and there being no affidavit of either of the subscribing witnesses proving its execution.

[1.] In this Court other grounds of objection are urged against the admissibility, in evidence, of the copy deed, than were presented in the Circuit Court. It is here insisted, first, that the proceedings for establishing the copy deed in Twiggs Superior Court, are void, there being no persons named in said proceedings as defendants, and that it does not appear that any person was served, or that any of the defendants resided in the county of Twiggs at the time. It appears that the heirs at law of Drury Williams were parties defendant, and that they were required by the Court to be served personally with the rule *nisi*, to establish said copy, and that they were served agreeably to said requirement. We think, therefore, that there were defendants to said proceeding, and that they were served. It does not appear that the Superior Court of Twiggs county *had not* jurisdiction of the case. The Superior Courts are Courts of general jurisdiction, and at the time of said proceedings, they were Courts of final resort, and the highest judicial tribunals known to the Constitution and laws: The Superior Court of Twiggs county gave this judgment. It stands there unreversed; and stands there as the judgment of a Court of competent jurisdiction. It, like all other judgments, may be impeached for fraud, and such irregularity as would avoid a judgment, but none such appears in the record before us. It is objected further, that Drury Williams, the feoffor, of Henry Williams, one of the lessors of the plaintiff, left a will and devised the land, and that the devisees of the land, and not the heirs at law of the said Drury Williams, should have been made parties defendant. This objection is founded on the assumption, that the judgment of the Court establishing the copy deed is *res inter alias acta*, and cannot be admitted in evidence against the devisees or those claiming under them. It appears in

this record, that one of the heirs at law is also a devisee, and upon the assumed ground of objection, the judgment is good against that devisee. But under the term " parties," the law includes all who are directly interested in the subject matter, and had a right to make defence, or to control the proceedings and to appeal from the judgment. 1 *Greenleaf, Sec. 523.* A devisee of lands is an *hæres factus*, and so made by the will of the testator. *Bac. Ab. Heir and Ancestor, B.* If there had been no actual or valid grant or donation of the land by the testator in his life time, the devisees were intersted in the subject matter, and on that ground might have defended the application to establish the deed—and might have appealed from a verdict adverse to their interest. The record and deed was therefore admissible against them.

It is again objected, that as the original deed could not be admitted as evidence, without proof of execution, the copy deed must also be proven to be the copy of a genuine original. We think, that the judgment of the Court established the copy offered in evidence as the copy of a genuine original conveyance. The case of *Beverly vs. Burke in 9th Ga.* is referred to as an authority to sustain this objection. It does not appear in that case, as it does in this, that the subscribing witnesses were dead. In the case of *Keeling vs. Ball,* it being a suit on a lost bond, which had been attested by witnesses, the names of whom had been forgotten, Lord Kenyon who tried the case, held that if it appeared who the subscribing witnesses were, they must be produced; but that it was the business of Courts of justice to apply the general principles of the law to the new cases as they arise. He said that was a new case, for it did not appear that the plaintiff could by any possibility know who the subscribing witnesses were. The subscribing witnesses, if they had been known, were the best evidence, *but not* being known, the rule had to be relaxed, and inferior evidence admitted. *Appendix to Peake's evidence XXIV,* 1st *Am. from 5th London Edition. See also,* 7 *Waddell,* 125. Here I think the

judgment establishing the deed would have been good without the witnesses, if they had been known; for it cannot be presumed that a Court would allow a copy of a forged or fraudulent deed to be established. But it must clearly be right when the attesting witnesses are dead.

We think that for the rejection of the deed, judgment of the Court below must be reversed.

[2.] We are of opinion that the Court below very properly refused to give the request of counsel for plaintiff in charge to the jury. Conveyances of land must be in writing. Parol evidence may be given in evidence, in proper cases, to prove the contents of written conveyances, but it is inadmissible as evidence to pass the title.

Judgment reversed.