SCALES, administrator, *et al. v.* CHAMBERS.

1. When the issue in controversy was whether a crier had knocked off property without giving persons at the sale fair and reasonable opportunity to bid, it was competent to show by one present that, but for the premature termination of the sale, he would have run the property up higher.

2. A mere crier employed by an administrator does not control the sale, but is simply the mouthpiece of the latter, and can not, over his protest, complete the sale; certainly not when there are present one or more persons willing to bid higher if allowed an opportunity to do so.

3. Applying to the facts disclosed by the record the rulings above announced, the court erred in refusing to grant a new trial.

Argued June 19, —Decided July 19, 1901.

Equitable petition. Before Judge Russell. Banks superior court. January 8, 1901.

Under an order of the court of ordinary, Scales, administrator of the estate of Crow, advertised for sale at public outcry certain tracts of land belonging to the estate, and at the sale the auctioneer, Owen, knocked down to Chambers a tract of about 108 acres for $565, the amount of his bid; but the administrator refused to consum-

mate the sale, and later on the same day caused the lot to be again offered for sale, and it was then knocked down to one Farr for $1,000. The second sale was made over the protest of Chambers, who offered to pay the amount at which the property had been knocked down to him, and who made known his objections publicly at the second sale. By an equitable petition against the administrator and against Farr, he alleged that the first sale was fair and legal, and that the second sale was a fraud on him, and was made in order that Farr might be the purchaser. He prayed for specific performance, for an injunction to prevent the administrator from making a deed to Farr, etc. The defendants answered that the land in question was knocked down to the plaintiff in pursuance of a wrongful and fraudulent combination between the crier and the plaintiff; that the price at which it was knocked down to him was less than half its value; that it was knocked down to him suddenly, unexpectedly, and without time or opportunity for bidders to consult or consider; that, immediately after it was knocked down, statements were made declaring the sale to be unfair, and the administrator protested instantly against the conduct of the crier and directed him to resell the property. The allegations as to fraud on the part of the defendants were denied. The trial resulted in a verdict for the plaintiff. The defendants excepted to the overruling of their motion for a new trial. The grounds of the motion are, that the verdict was contrary to law and the evidence, and to a specified part of the charge of the court, and that the court refused to allow defendants to prove by the witness Scales that, when the property was knocked off to the plaintiff, Scales would have bid more than plaintiff's bid, and intended, unless he could buy it for less, to bid up to $1,800 for the property, had it not been knocked off. The court ruled that this evidence was matter of opinion, and immaterial.

F. M. Johnson and H. H. Perry, for plaintiffs in error.
W. I. Pike, A. P. Wofford, and N. L. Hutchins, contra.

COBB, J. Land belonging to the estate of a decedent can be sold in this State only in the manner prescribed by law. If the decedent dies intestate, the land must be sold by the administrator. If the decedent dies testate, the land must be sold by the executor or administrator with the will annexed in the manner provided in the

will.    In the absence of provisions in the will on the subject, the land must be sold in the manner prescribed by law for sales by administrators.  Prior to the adoption of the code it seems that it was absolutely essential to the validity of a sale of land belonging to the estate of a person who died testate, that the executor should personally make the sale, and that he had no authority to delegate this power to an agent.  See *Atkinson* v. *Mfg. Co.*, 58 *Ga.* 230.  It seems, however, that even before the adoption of the code an administrator might sell the lands of his intestate by an agent.    *Cheeves* v. *Hora*, 22 *Ga.* 600; *Bond* v. *Watson*, Id. 637.  And this would seem to be also true in regard to executors who were not vested by the will with any discretion as to the time, place, manner, etc., of making the sales, and who were bound by the laws in reference to sales by administrators.    The code provides that executors, administrators, guardians, and trustees are authorized to sell and convey property by attorney in fact in all cases where they may lawfully sell and convey in person.    Civil Code, § 3000.    It would seem from this that since the code, if an executor or administrator desires to sell the land of the estate by an agent, the agency must be created in writing, as that is the usual mode of appointing attorneys in fact.  It is not, however, necessary to decide in the present case whether an agency created by parol would be valid.  An administrator can undoubtedly appoint in writing an agent to sell the property of the estate, and such agent may be both the agent to sell and the crier at the sale ; and when he acts in both capacities under the authority thus given, each and every act of the agent which was within the authority given would, in the absence of fraud, bind the administrator ; the administrator of course being responsible to those interested in the estate for the mistakes, misconduct, and negligence of his agent.  In a case where the administrator makes the sale himself, it is not absolutely essential to the validity of the sale that he should be the actual crier at the sale, but he may employ a person for the sole purpose of crying the sale, and this employment may be either in writing or in parol; and if the purpose of such employment extends no further than that of engaging the services of a mere crier, then the crier has no right or authority to do anything in connection with the sale except under the immediate supervision of the administrator.  He is not in any sense the agent or attorney in fact of the administrator; he is a mere servant, and acts solely as the

mouthpiece of the administrator, and must do nothing which the administrator forbids, and must not refuse to do anything which he commands. He must cry the sale so long as the administrator requires it to be cried, and must not accept any one as a purchaser of the property until authorized to do so by the administrator. An auctioneer is sometimes also the crier at the sale, but he is always more than a crier; an auctioneer is for some purposes the agent of the person who has placed the property in his hands for sale. See Civil Code, §3527. If an administrator create an agency to sell the property of his intestate by the employment, in the manner prescribed by law, of one who is both auctioneer and crier, then the auctioneer as agent, but not solely as crier, would have a right to accept a bid and close the sale and bind the administrator by such acceptance. In such a case, of course, the auctioneer would be liable to the administrator for any loss that might result to him, or the estate he represented, on account of the auctioneer's misconduct, mistake, or negligence.

When the principles above stated are applied to the facts of the present case, a reversal of the judgment refusing to grant a new trial is the result. The evidence clearly shows that the administrator employed the person who cried the property as a mere crier, and did not confer upon him any authority as agent or attorney in fact to represent him. He was the mere mouthpiece of the administrator. When he attempted to close the sale and accept a bid from a person who had made an offer for the property, and the administrator's attention was called to this, and acceptance of the bid as final promptly repudiated by him, no complete sale was made, for the simple reason that the offer of the bidder was never accepted by the administrator, and the two parties essential to a complete sale were wanting. The administrator could have accepted the bid if he had seen proper to do so, but he saw proper to refuse to accept the bid; and when he did this the sale was incomplete and the bidder was released. It was argued here that because the bidder would have been bound to comply with the bid if the administrator had accepted it, therefore the administrator was bound to accept the bid. The fallacy of this reasoning is apparent. The bid was an offer to take the property at a certain price. If accepted, the sale was complete; if refused, there was no sale. The evidence shows that it was refused, and therefore the bidder was

not only released from his bid, but deprived of any right to claim the property as having been purchased by him at the sale. The trial judge overruled the motion for a new trial upon the assumption that the evidence would have authorized a finding that, on account of the close proximity of the administrator to the crier at the time the property was knocked down by the crier, the administrator had assented to the acceptance of the bid by the crier. We have carefully read the brief of evidence in this case with this point in mind, and we are constrained to disagree with our brother of the circuit bench in the conclusion he has reached. It seems to us that not only was there no evidence to authorize a finding that there was an implied assent by the conduct of the administrator at the time the property was knocked down, but the evidence rather demanded a finding that there was a prompt repudiation of the bid as soon as the attention of the administrator was called to the fact that the bid had been accepted by the crier, and the sale attempted to be completed; the attention of the administrator having been for the moment diverted from the actual crying of the sale. As the case is remanded for a new trial, we have ruled upon the controlling question in the case, and also upon the question of the admissibility of certain evidence, the last ruling being contained in the first headnote.

*Judgment reversed. All the Justices concurring.*